## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| ANDREW LICHY, MARK BIXLER, | ) | |
| MARK WALTERS, FREDERICK SPEER, and | ) | |
| RYAN NIEMEYER, on behalf of themselves | ) | |
| and others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| v. | ) | 1:15-cv-13339 |
| | ) | |
| CENTERLINE COMMUNICATIONS LLC, | ) | |
| JOSHUA DELMAN, BENJAMIN DELMAN, | ) | |
| | ) | |
| Defendants. | ) | |

_____ )

### PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
### AND TO ISSUE NOTICE UNDER 29 U.S.C. § 216(b)
### AND MEMORANDUM IN SUPPORT THEREOF

Plaintiffs in this case worked for Defendants (collectively, "Centerline") as technicians who installed, repaired, maintained, and decommissioned telecommunications towers outside of Massachusetts. They have brought this case on behalf of themselves and their similarly situated co-workers, challenging a set of travel policies imposed by Centerline under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Pursuant to those policies, Centerline did not pay its hourly employees for time they spent traveling together in company-owned vehicles between the company warehouse or an agreed-upon "muster point"[1] and their assigned job sites.

---

[1]     As explained below, a "muster point" is a designated meeting spot at which the crew members met in order to travel to a job site, and to which they returned from the job site at the end of the day.

Plaintiffs now seek to notify similarly situated employees that they may join this lawsuit pursuant to 29 U.S.C. § 216(b).  The standard for obtaining such notice is very lenient and is well satisfied here.  Plaintiffs need only show that the employees they seek to notify are similarly situated with respect to their claims under the FLSA.  Unlike a motion to certify a class under Federal Rule of Civil Procedure 23, Plaintiffs need not show that common questions will predominate (though they do), that a class or collective action is superior (though it is), or that their claims are typical (though they are).  Rather, Plaintiffs need only make a "modest factual showing or assert[] substantial allegations that the putative class members [are] together the victims of a single decision, policy, or plan that violated the law."  *Trezvant v. Fidelity Emp'r Servs. Corp.*, 434 F. Supp. 2d 40, 42-45 (D. Mass. 2006).

Here, Plaintiffs have more than satisfied the requirements for notice under § 216(b).  As set forth below, a uniform policy relating to compensation for travel time applied to all individuals in the proposed collective action.  That policy, described in the employee handbook, explicitly denied overtime pay to Centerline employees for travel from the warehouse or muster point to the job site, and denied any compensation at all for return travel, except under certain circumstances.  These policies were enforced even when employees performed compensable work prior to and subsequent to travel.  The travel policy also applied to foremen, who were tasked with driving crew members in Centerline-owned trucks equipped with essential machinery needed at the job sites.

The suitability of this case to proceed as a collective action was recently affirmed by the Massachusetts Superior Court, which certified a class of Massachusetts-based

Centerline employees in *Bodkin et al. v. Centerline Communications, LLC et al.*, Plymouth Civil Action No. 2015-0265 (Mass. Super. Feb. 13, 2017), under Massachusetts Rule of Civil Procedure 23.  The plaintiffs in that case challenge the same travel policies at issue here on behalf of employees performing work in Massachsuetts under the Massachusetts wage laws.

Accordingly, for the reasons set forth here, Plaintiffs respectfully ask that the Court:

(1) conditionally certify this case as a collective action on behalf of all construction crew and maintenance crew employees (including foremen) who have worked for Centerline Communications, LLC, Joshua Delman, and Benjamin Delman outside of Massachusetts, between October 26, 2012,[2] and April 30, 2016;

(2) order Defendants to produce the names, Social Security Numbers, addresses, email addresses, and telephone numbers of the conditionally certified collective action members; and

(3) authorize Plaintiffs to issue notice to all members of the conditionally certified collective action.

## FACT STATEMENT

1.    **Centerline and its tower crews.**

Centerline is a company headquartered in Raynham, Massachusetts that performs work in 25 states.  (Delman Deposition Transcript 16, 20 [Exhibit 1]; Answer, ¶

---

[2]    The parties have entered into a stipulation tolling the statute of limitations for potential opt-in plaintiffs as of October 26, 2015.  (ECF Docket No. 8).

3 [ECF Docket No. 15]).  Its business is to develop, construct, and maintain telecommunication networks, including cell phone towers, for its customers.  (Delman Tr. 11, 24 [Ex. 1]).  To that end, Centerline employs construction crews, which are typically comprised of three employees: two tower technicians (a lead technician and a tower hand) and a foreman.  (Delman Tr. 21-22 [Ex. 1]).  The crews construct telecommunications sites and install antennas, radios, and cabling on cell phone towers, among other tasks.  (Delman Tr. 24 [Ex. 1]).  Centerline also employs maintenance crews, which do work similar to that of the construction crews.  (Delman Tr. 95 [Ex. 1]).  The maintenance crews are comprised of a foreman and one other employee.  (Delman Tr.  95-96 [Ex. 1]).  Construction crews and maintenance crews report to the same regional operations manager, or some other person overseeing field operations for that region.  (Delman Tr. 19 [Ex. 1]).  Each of the named plaintiffs in this matter worked for Centerline during the past five years as a tower technician or foreman or both.[3] (Complaint ¶¶ 4-8 [ECF Docket No. 1]; Delman Tr. 28-29, 35-36, 42 [Ex. 1]).  All members of the construction and maintenance crews, including the foremen, are paid on an hourly basis.  (Delman Tr. 22, 96 [Ex. 1]).

**2.     Working on the tower crew.**

Since 2012, Centerline has maintained offices and warehouses in Chicago, servicing the Midwest region; Syracuse, servicing the upstate New York region;

---

[3]     Specifically, Mark Bixler, Andrew Lichy, Ryan Niemeyer, and Frederick Speer were hired as tower technicians.  (Delman Tr. 28-29, 35, 42 [Ex. 1]).  Ryan Niemeyer was later promoted to foreman.  (Delman Tr. 36 [Ex. 1]).  Mark Walters was hired through a contracting agency and worked as tower technician on a construction crew with other Centerline employees.  (Delman Tr. 45-48 [Ex. 1]; Complaint ¶ 6 [ECF Docket No. 1]).

Pittsburgh, servicing the western Pennsylvania region; Philadelphia, servicing the

eastern Pennsylvania region; and Raynham, Massachusetts, servicing the Northeast

Region. (Delman Tr. 14-18 [Ex. 1]).[4] The office/warehouse for each region, also

referred to by the crews as "the shop," is where technicians store their equipment,

including testing equipment, hand tools, ropes, machinery, drills, and trailers. (Delman

Tr. 19-20, 23 [Ex. 1]). Customer equipment, including antennas, radios, and cabling,

may also be stored there. (Delman Tr. 23 [Ex. 1]). The trailers are used to transport

customer equipment to the job site. (Delman Tr. 23 [Ex. 1]).

Centerline requires its crews to travel together to the job sites, unless a project

manager has specifically requested that an employee drive directly to the site. (Delman

Tr. 32, 52-54 [Ex. 1]; Travel Policy [Exhibit 3]). Occasionally a crew member may take

his personal vehicle to the site for personal reasons, such as needing to leave early.

(Delman Tr. 33 [Ex. 1]). Typically, however, the crews travel together in a Centerline-

owned truck. (Delman Tr. 25 [Ex. 1]; Email from Josh Delman to Stephen Longton and

Barbara D'Amico (Feb. 3, 2012) [Exhibit 2] at CL00474 ("the crew will muster in the AM

and get paid for the ride to the site from the time they get in the truck"). Centerline

assigns a truck to each foreman, who is tasked with driving the vehicle to the job site.

(Delman Tr. 25 [Ex. 1]). The truck is equipped with a "capstan hoist," a "piece of

hoisting equipment that allows technicians to lift equipment up to an elevation on the

---

[4]     Currently, Centerline only maintains two offices: one just outside Philadelphia
and one in Raynham. (Delman Tr. 12 [Ex. 1]).

tower." (Delman Tr. 26 [Ex. 1]). The truck, with the attached capstan hoist, needs to be at the job site in order for the crews to perform their work. (Delman Tr. 25-26 [Ex. 1]).

The crews meet either at the shop or at a "muster point," typically a park-and-ride. (Delman Tr. 50-51 [Ex. 1]; Travel Policy [Ex. 3]). When the crews meet at the shop, they may perform work there before leaving for the job site, such as loading material onto the truck, preparing testing equipment, or conducting vehicle maintenance. (Delman Tr. 70-71 [Ex. 1]). Crews may also conduct a daily "tailgate" meeting at the office, during which they set goals and objectives for the day, conduct a "Job Safety Review," and complete paperwork. (Delman Tr. 40-41 [Ex. 1]). Crews also report to the main office for a weekly safety meeting before heading to their job sites, although this practice has varied by region. (Delman Tr. 83 [Ex. 1]).

At the end of the day, crews return from the job site to the shop or the muster point. When they return to the shop, the crews sometimes perform work there, such as trash removal, unloading the vehicle, and loading the vehicle for the next day. (Delman Tr. 71-72 [Ex. 1]). A project manager might also direct the crew to return to the warehouse in order to return testing results. (Delman Tr. 72 [Ex. 1]). The crews, however, also perform work back at the warehouse which is not directed by the project manager. (Delman Tr.  72 [Ex. 1]).

3.      **Centerline's travel time and timekeeping policies.**

Centerline has just one employee handbook and maintains uniform compensation and travel time policies for all hourly employees in all regions. (Delman

Tr. 20 [Ex. 1]).  These policies are established in the Raynham office.  (Delman Tr. 20 [Ex. 1]).

Centerline's travel policy in effect from January 2012 until April 2016 was spelled out in the employee handbook.  (Delman Tr. 52-56 [Ex. 1]; Travel Policy [Ex. 3]). Pursuant to that policy, Centerline paid its crew members for travel *to* the job site from the shop or the muster point, but only paid for return travel *back* to the shop or muster point when the job site was more than 130 miles from the office and the project duration was less than one day.  *Id.*  Travel time, whether to or from the job site, did not count toward an employee's overtime hours and was only ever compensated at the employee's regular hourly rate.  *Id.*  In September 2014, a procedural document providing additional details about application of the travel policy was distributed to Centerline's management team.  (Delman Tr. 56-62 [Ex. 1]; Travel Policy Procedure [Exhibit 4]).  Those procedures identified three circumstances under which return travel would be compensated: (1) if the project manager overseeing the assignment requested that the crew return to the shop; (2) the foreman requested an "exception" due to unusual circumstances, such as excessive traffic; or (3) the distance from the work site to the shop or muster point was greater than 130 miles.  (Travel Policy Procedure [Ex. 4]).

Pursuant to these procedures, foremen were required to "clock out" their crews when they left their last job site. (Travel Policy Procedure [Ex. 4]).  If the crew subsequently did work back at the warehouse, they were allowed to "clock in" for the time they spent doing that work; however, their travel between the last job site and their arrival at the shop would not be compensated unless one of the three exceptions

applied.  (Delman Tr. 61-62 [Ex. 1]; Travel Policy Procedure [Ex. 4]).  Exceptions needed to be approved by either a project manager or the regional operations manager and, in the case of traffic exceptions, Jon Markus Pinard, the Vice President of Operations. (Travel Policy Procedure [Ex. 4]).  Lynne Shapleigh, a finance administrator, would then add travel time to the employee's time record by comparing those records with reports from Fleetmatics, a GPS system that allows Centerline to track each of its vehicle's locations at any given point in time.  (Delman Tr. 58-59, 85-86 [Ex. 1]; Travel Time Procedure [Ex. 4]).  In the course of making adjustments to employees' time records, Centerline would sometimes decline to pay hourly employees for time when they were clocked in at the end of the day.  (Delman Tr. 90-91; Employee Touch Detail [Exhibit 5] at CL00787 & 930).

Centerline's travel policy resulted in employee travel that was not compensated at the overtime rate (i.e. travel to the job site from the shop or muster point), and travel that was not compensated at all (i.e. travel from the job site back to the shop or muster point).  In practice, the policy also resulted in employees not being paid for work performed at the shop.  Plaintiffs allege that these policies and practices resulted in violations of the FLSA.  (Complaint ¶ 20 [ECF Docket No. 1]).

In April 2016, Centerline implemented a new policy for travel time.  (Delman Tr. 64 [Ex. 1]).  Now, it pays its crews for all travel time and travel time is included in overtime calculations.  (Delman Tr. 64 [Ex. 1]).

## ARGUMENT

**I.     THE COURT MAY ORDER THAT NOTICE ISSUE UPON A MODEST FACTUAL SHOWING THAT SIMILARLY SITUATED EMPLOYEES EXIST.**

The FLSA authorizes workers to bring suit on their own behalf and on behalf of all others similarly situated.  29 U.S.C. § 216(b).  Unlike Rule 23 procedures, workers may only join an FLSA collective action if they "give [their] consent in writing to become . . . a party and such consent is filed with the court in which [the] action is brought."  *Id.*  This procedure affords plaintiffs the opportunity to resolve claims that typically are too small to prosecute individually while "lower[ing] individual costs to vindicate rights by the pooling of resources."  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  It also assists courts in avoiding a "multiplicity of duplicative suits" challenging a common policy or practice, and "set[s] cutoff dates to expedite disposition of the action."  *Id.* at 170-71.

All of "[t]hese benefits . . . depend on employees receiving accurate and timely notice concerning the pendency of the collective action so that they can make informed decisions about whether to participate."  *Id.*  Otherwise, the "enforcement of [statutory] remedies for violations which victimize a group of people will be limited only to those victims who are already known to their 'champion,' . . . or who are fortunate enough to hear and heed 'the vagaries of rumor and gossip,' . . . or who are courageous enough to recognize the wrong done them and sue on their own."  *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 403 (D.N.J. 1988), *aff'd* 493 U.S. 165 (1989).

The failure to facilitate notice can result in the spoliation of claims, since, as previously noted, the statute of limitations for FLSA collective actions is not tolled as to

each potential collective action member unless and until he files a written consent form with the Court.  29 U.S.C. §§ 256-57; *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997) (potential collective action members' claims will "die daily" until they are notified of the action and given a chance to opt-in).  Courts should reserve "merits-based arguments" for the period after notice is issued because the "rights of putative class members may expire in the interim."  *Poreda v.  Boise Cascade, L.L.C.*, 532 F. Supp. 2d 234, 241 (D. Mass. 2008).

To remedy these problems, the Supreme Court has authorized the district courts to facilitate notice.  *Hoffman-La Roche*, 493 U.S. at 170.  As in most jurisdictions, the district courts for the First Circuit follow a two-step certification approach in determining whether to allow notice.  *See Poreda*, 532 F. Supp. 2d at 238-39 ("As District Judge William G. Young recently noted, a majority of courts addressing the issue of whether the similarly situated requirement has been satisfied have . . . adopted a two-tier approach").  "Under this approach, the court makes an initial determination of whether the potential class should receive notice of the pending action and then, later, after discovery is complete, the court makes a final 'similarly situated' determination." *Id.*, *quoting Trezvant*, 434 F. Supp. 2d at 43.

During the first, initial step, before discovery has been completed, the merits of the plaintiffs' claims are not at issue.  *See Trezvant*, 434 F. Supp. 2d at 43; *Kane v. Gage Merchandising Servs., Inc.*, 138 F. Supp. 2d 212, 214-15 (D. Mass. 2001).  Instead, the "court usually relies 'only on the pleadings and any affidavits which have been submitted . . . .'"  *Kane*, 138 F. Supp. 2d at 214, *quoting Mooney v. Aramco Services Co.*, 54

F.3d 1207, 1214 (5th Cir. 1995).  "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."  *Id.*; *see also Wise v. Patriot Resorts Corp.*, 2006 WL 6110885, *1 (D. Mass. Feb. 15, 2006).

There is no "hard-and-fast rule as to how plaintiffs seeking conditional certification must meet this lenient 'similarly situated' standard at this initial stage." *Trezvant*, 434 F. Supp. 2d at 44-45.  "[S]ome courts have held that, at the 'notice' stage, plaintiffs need only make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law."  *Kane*, 138 F. Supp. 2d at 214.  Others have generally required a "modest factual showing" of "similar factual and legal characteristics, so that [they are] satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case."  *Trezvant*, 434 F. Supp. 2d at 45.  Plaintiffs here have satisfied both standards.

## II.    THE COURT SHOULD AUTHORIZE NOTICE IN THIS CASE BECAUSE PLAINTIFFS HAVE MORE THAN SATISFIED THEIR MODEST BURDEN OF SHOWING THAT SIMILARLY SITUATED EMPLOYEES EXIST.

This case revolves around an undisputed policy that was equally applicable to all construction and maintenance crew employees:  Centerline's policy of not paying overtime for travel to the job site and not paying any compensation at all for travel from the job site, except under three limited circumstances.  (Delman Tr. 20, 95 [Ex. 1]; Travel Policy [Ex. 3]; Travel Policy Procedure [Ex. 4])

The legality of those policies is the central issue around which the putative class claim revolves, and presents myriad common questions, such as whether and in what circumstances travel time is compensable, and whether and in what circumstances the crew members perform work after travel from the job site.  The application of the FLSA and related regulations to the facts in this case will be the same for the named plaintiffs and for every member of the proposed collective.  As such, it is only appropriate that employees should receive judicially approved notice informing them in a neutral manner about this lawsuit, their rights, and their ability to join the proceedings should they wish to pursue their claims under the FLSA.

Moreover, notice is appropriate in this case because it would further the remedial and enforcement purposes of the FLSA.  Notice is intended to "avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer."  *Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003).  Notice also establishes a strong incentive for employers to comply with the FLSA.  *See Skirchak v. Dynamics Research Corp.*, 432 F. Supp. 2d 175, 181 (D. Mass. 2006) (without class actions, employers would have no "incentive. . . to avoid the type of conduct that might lead to class action litigation in the first instance").  Authorizing notice in this case would advance those goals, both by allowing a group of employees who have been harmed by an alleged violation of the FLSA to participate in a single suit, and by ensuring that Defendants are held accountable under that statute.  Thus, as in the cases discussed above, the Court should conditionally certify the collective action and authorize notice to issue.

Importantly, Centerline employees bringing claims virtually identical to the claims here under state wage laws recently won class certification under the more rigorous Rule 23 standard.  Specifically, Massachusetts Superior Court Judge Robert Kane recently certified a class of Centerline's Massachusetts-based employees, who allege violations of the Massachusetts wage laws based on the same Centerline travel policies at issue here.  *Bodkin et al. v. Centerline Communications, LLC et al.*, Plymouth Civil Action No. 2015-0265 (Mass. Super. Feb. 13, 2017).  A copy of the decision is attached as Exhibit 6.[5]  Judge Kane noted that "if [plaintiffs'] allegations are proven, the claims of all class members would contain a common nucleus of fact and law, even if each individual's damages could differ."  *Id.* at 8.

Additionally, numerous courts have granted conditional certification under the FLSA in cases in which plaintiffs have challenged uniform policies relating to travel compensation such as the policies at issue here.  In *White v. MPW Indus. Servs., Inc.*, for example, the court granted the plaintiffs' motion for conditional certification when "Plaintiffs have presented evidence of . . . a company-wide policy of failing to pay employees for shop time and travel time."  236 F.R.D. 363, 374 (E.D. Tenn. 2006).

---

[5]     Judge Kane's decision describes a pre-2012 travel policy that "expressly prohibited crew members from traveling to the job site in their own vehicle without prior approval from management," but notes that the subsequent policy did not contain that express prohibition.  *Bodkin*, Plymouth Civil Action No. 2015-0265, at 3 (Mass. Super. Feb. 13, 2017) [Ex. 6].  In the present case, Centerline's 30(b)(6) deponent testified that even after January 2012 – through April 2016, in fact – the travel policy found in the employee handbook contained the same language requiring crews to meet at the shop or a muster point.  (Delman Tr. 52-53 [Ex. 1]; Travel Policy [Ex. 3]; Email from Josh Delman to Stephen Longton and Barbara D'Amico (Feb. 3, 2012) [Ex. 2] at CL00473 (displaying edits to pre-2012 travel policy)).

Similarly, the court in *Eldred v. Comforce Corp.*, held that "Plaintiffs easily meet the requirements for collective action under FLSA § 216(b)" where the plaintiffs had presented evidence of "Comforce's adoption of a travel-time compensation policy 2002 and 2004 that allegedly violates the FLSA."  Civil Action No. 3:08-CV-1171 LEK/DEP, 2010 WL 812698, at *15 (N.D.N.Y. Mar. 2, 2010).  The Court in *Hathaway v. Masonry* held that "Plaintiff has made a modest factual showing that he and the putative plaintiffs were subject to or are subject to a common policy or plan that may violate the FLSA," when, *inter alia*, "Plaintiff has shown, and Defendant has admitted, that employees were not compensated for travel time from the Murray Facility to the work site."  Civil Action No. 5:11-CV-121, 2012 WL 1252569, at *4 (W.D. Ky. Apr. 13, 2012); *see also Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 248 (W.D. Mich. 2011) ("Plaintiffs have made a modest factual showing that there exists similarly situated individuals who are subject to the same policy of not including travel time toward the calculation of overtime.").

Federal district courts have similarly granted class certification under the Federal Rule of Civil Procedure 23 in cases bringing state law wage claims arising from travel compensation policies similar to Centerline's.  In *Gonzales v. SimplexGrinnell LP*, 289 F.R.D. 463 (N.D. Cal. 2013), the plaintiffs were field technicians who traveled to customer sites to repair fire detection systems. *Id.* at 463.  They claimed that they were owed compensation for their travel time, including travel time to and from their district offices. *Id.*  On class certification, the court held that the parties' dispute, "at core," was "primarily a legal dispute as to whether California law requires compensation for travel time under these general facts.  If [the employer] is correct that plaintiffs will be unable

to show the policies and practice they allege even exist, the claims will fail, on a class-wide basis." *Id.* The court thus certified a class comprised of all the employer's field technicians. Similarly, in *Rai v. Santa Clara Valley Transportation Auth.*, 308 F.R.D. 245 (N.D. Cal. 2015), the plaintiffs were train operators challenging several compensation policies, including the employer's policy of not paying for "split-shift travel time" (i.e., time spent traveling from one "geographically distant" location to another between shifts). *Id.* at 255. The court granted class certification, holding that the plaintiffs had "raised the common questions of whether the categories of time for which [they sought] payment are compensable work time and whether [defendant's] compensation scheme" violated state law. *Id.* at 257.

As in these other cases challenging travel compensation policies, Plaintiffs here have more than satisfied the standard for conditional certification.

## <u>CONCLUSION</u>

Accordingly, for the reasons set forth herein, Plaintiffs respectfully ask that the Court:

(1)     conditionally certify this case as a collective action on behalf of all construction crew and maintenance crew employees (including foremen) who have worked for Centerline Communications, LLC, Joshua Delman, and Benjamin Delman outside of Massachusetts, between October 26, 2012, and April 30, 2016;

(2)     order Defendants to produce the names, Social Security Numbers, addresses, email addresses, and telephone numbers, of the conditionally certified collective action members within fourteen (14) days after the Court issues its decision; and

15

(3)     order Plaintiffs to submit a proposed form of notice to opt-in class members

within fourteen (14) days after the Court issues its decision.

Respectfully submitted,

ANDREW LICHY, MARK BIXLER, MARK
WALTERS, FREDERICK SPEER, and
RYAN NIEMEYER, on behalf of themselves
and all others similarly situated,

By their attorneys,


 /s/ Hillary Schwab
Hillary Schwab, BBO #666029
Rachel Smit, BBO #688294
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
Fax: (617) 488-2261
www.fairworklaw.com
Email:  hillary@fairworklaw.com,
rachel@fairworklaw.com

Alan D. Meyerson, BBO #682515
LAW OFFICE OF ALAN DAVID MEYERSON
100 State Street, Suite 900
Boston, MA 02109
(617) 444-9525
Email:  alan@alandavidmeyerson.com

Dated:        March 1, 2017

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 1, 2017, a true copy of this document was served via the

Court's ECF System on counsel for all defendants in this case.

<u>/s/ Hillary Schwab</u>
Hillary Schwab


## <u>CERTIFICATE OF CONFERENCE</u>

I certify that Plaintiffs' counsel conferred with Defendants' counsel regarding

this motion and the relief requested herein on February 27, 2017.  He stated that

Defendants do not assent to this motion.

<u>/s/ Hillary Schwab</u>
Hillary Schwab