UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Eastern Division

| | |
|---|---|
| ANDREW LICHY, MARK BIXLER, MARK WALTERS, FREDERICK SPEER, and, RYAN NIEMEYER, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs<br><br>    V.<br><br>CENTERLINE COMMUNICATIONS LLC, JOSHUA DELMAN, and BENJAMIN DELMAN,<br><br>    Defendants | Civil Action No. 1:15-CV-13339-ADB |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION**

**INTRODUCTION**

Defendants, Centerline Communications LLC, Joshua Delman, and Benjamin Delman (collectively "Centerline"), oppose Plaintiffs' Motion for Conditional Class Certification on the grounds that the putative class members are not similarly situated such that proceeding as a collective action is not appropriate. Plaintiffs, without supporting affidavits, assert that the putative class is similarly situated because its members were all Centerline crew members subject to a single travel time policy, the legality of which is the central issue in this case. *See* Memorandum in Support of Motion for Conditional Certification, at pp.11-12. However, a review of the underlying facts shows that the central issue in this case is not the *per se* legality of Centerline's policy, but whether the policy was lawful *as applied* to individual crew members,

on specific days, in individual sets of circumstances. To make such determinations will require the Court to conduct individualized factual assessments to determine the veracity of each individual claim. Furthermore, although all putative class members were Centerline crew members, the crews are comprised of at least two distinct classes of employees – foremen and tower technicians. Each of these groups had distinct job functions and responsibilities that the Court will be required to consider individually when assessing their FLSA claims. As such, Plaintiffs cannot meet their burden to show the putative class is similarly situated and their Motion for Conditional Certification should be denied.

## STATEMENT OF FACTS

Centerline is a telecommunications company which supports the major mobile operators in the development, construction, and maintenance of their networks. Deposition of Josh Delman, attached to the Plaintiffs' Motion for Conditional Class Certification as Exhibit 1 ("Delman Dep.") at p. 11. The company is headquartered in Raynham, Massachusetts. Delman Dep. at p. 20; Answer, ¶3 [ECF Docket No. 15]. Since 2012-2013, Centerline has maintained offices and warehouses in Chicago, Syracuse, Pittsburgh, Philadelphia and Raynham. Delman Dep. at pp. 14, 19. Centerline performs work in 25 states. Delman Dep. at p. 16. The warehouses typically store equipment the technicians use (like hand tools, ropes and testing equipment) and may also house machinery and customer equipment. Delman Dep. at p. 23.

Centerline's employees are assigned to any one of a number of crews dependent on their skillset, including construction crews and maintenance crews. Delman Dep. at pp. 18, 93-96. Construction and maintenance crews typically consist of a foreman, and tower technicians. Delman Dep. at pp. 21-22, 95. Crew members are paid on an hourly basis. Delman Dep. at pp. 22, 96.

### Construction and Maintenance Crews

Construction and maintenance crews are typically composed of 3 or 4 workers. Delman Dep. at pp. 21, 26. Crews may construct all or part of a telecommunications site which could involve climbing a tower, installing antennas, installing radios, or installing cabling. Delman Dep. at pp. 24, 26. Crews typically meet at either the shop or at a designated "muster point." Delman Dep. at p. 53; Ex. 3, Travel Policy.

### Foremen

Foremen have distinct job responsibilities and are evaluated differently than tower technicians. Foremen are responsible for the construction of the site and the crew members themselves. They may also be required to pick up materials at the shop before heading to the jobsite. Delman Dep. at p. 33. Each foreman is assigned a company truck and is responsible for transporting the other crew members to the worksites. Delman Dep. at pp. 24-25. Crews typically travel together to the worksites in company vehicles, but may use their personal vehicles due to geographical considerations (if, for example, their homes are closer to the site than the office or muster point), convenience, or because they would be required to leave early on a particular day. Delman Dep. at pp. 32-33. The foremen also conduct daily tailgate meetings which are typically held at the jobsite. Delman Dep. at p. 41.

### Tower Technicians

The lead technicians and tower hands (together, tower technicians), comprise the remainder of the crews. The lead technicians are responsible for construction of the site under the direction of the foreman, and the tower hands serve as their assistants. Delman Dep. at pp. 22, 26. Neither lead technicians nor tower hands are assigned company vehicles. Delman Dep. at p. 24-25.

<u>Centerline's Travel Time Policies</u>

Centerline has one travel time policy that applies to construction and maintenance crews, regardless of state. Delman Dep. at p. 20. The policy at issue here was in place between 2012 and 2015. Although compensation was not required under the FLSA where the performance of duties does not begin until arrival at the jobsite, under Centerline's travel policy, crews were paid for travel *to* the jobsite even where no work was performed at the warehouse. Delman Dep. at p. 50. Crews were paid for the return trip under three sets of circumstances: (1) if the project manager requested that the crew members return to the warehouse; (2) the foreman requested an exception due to extenuating circumstances like traffic or accidents; or (3) travel from the jobsite to the muster site or to the office was over 130 miles. Delman Dep. at pp. 50-51, 55-56; Ex. 3, Travel Policy; Ex. 4, Travel Policy Email. Travel exceptions were required to be approved by the operations manager or project manager responsible for the market. Delman Dep. at p. 56.

Thus, if crew members were directed to come back to the warehouse to work, they would be compensated for the travel time and then the work time. If they were not directed to return, but worked at the warehouse, they would be compensated for the work time at the warehouse but not the travel time. Delman Dep. at pp. 55-56.

Since July 2015, all crews have been compensated from the time they arrive at the warehouse or muster point to the time they return to the warehouse or muster point (or from the time they leave the jobsite if they drive their own vehicles). Delman Dep. p. 64.

**AGRUMENT**

I. **Plaintiffs' Putative Class is Not "Similarly Situated" Because the Issues Raised by Their Action Cannot Be Resolved Based On Common Inquiries.**

   a. **Legal Standard**

In order to obtain preliminary collective action certification, a plaintiff must demonstrate that he is "similarly situated" to the other members of the proposed class. *See* 29 U.S.C. § 216(b). A majority of courts addressing the issue of whether the similarly situated requirement has been satisfied have adopted a two-tier approach. *See Trezvant v. Fidelity Employer Servs. Corp.,* 434 F.Supp.2d 40, 42, 43 (D.Mass.2006). First, at the "notice stage," the Court relies upon the pleadings and affidavits to determine whether the putative class members "were subject to a single decision, policy, or plan that violated the law." *Burns v. City of Holyoke*, 881 F.Supp.2d 232, 234 (D. Mass. 2012), *quoting Kane v. Gage Merch. Servs., Inc.*, 138 F.Supp.2d 212, 214 (D. Mass. 2001). Second, upon the close of discovery and a motion from an employer, the Court considers whether decertification is warranted. *Burns*, 881 F.Supp.2d at 234; *see also Poreda v. Boise Cascade, L.L.C.*, 532 F.Supp.2d 234, 238–39 (D. Mass. 2008).

   b. **The Plaintiffs Here Are Not Similarly Situated.**

To determine whether plaintiffs are similarly situated, the Court considers whether a common question exists that can be answered without individualized inquires. *Strait v. Belcan Eng'g Grp., Inc.*, 911 F.Supp.2d. 709, 720 (N.D. Ill. 2012); s*ee* 29 U.S.C. 216(b); *see also* Fed. R.Civ.P. 23(b)(3). Although the "similarly situated" determination is made using a fairly lenient standard, the standard is not "invisible." *Burns*, 881 F. Supp. 2d at 234, *quoting Houston v. URS Corp.*, 591 F.Supp.2d 827, 831 (E.D. Va. 2008). Rather, the standard is used "as a matter of sound case management" and to avoid "a frivolous fishing expedition at the employer's expense." *Burns*, 881 F.Supp.2d at 234, *quoting Melendez Cintron v. Hershey Puerto Rico, Inc.*,

363 F.Supp.2d 10, 18 (D.P.R. 2005). Thus, plaintiffs must make a "preliminary factual showing that there actually exists a similarly situated group of potential plaintiffs." *Melendez Cintron*, 363 F. Supp. 2d at 18. At a minimum, to satisfy the "similarly situated" standard, plaintiffs are required to put forth some evidence that the legal claims and factual characteristics of the class in the case are similar. *Trezvant*, 434 F.Supp.2d at 44; *see also* Kane, 138 F.Supp.2d at 214.

The Plaintiffs here cannot satisfy their burden. Plaintiffs assert that the putative class members are similarly situated because they were all either construction or maintenance crew members who were subject to Centerline's travel policy which did not pay employees overtime for travel to the job sites, and which only paid employees for travel time from the job site in three sets of circumstances. Plaintiffs' oversimplification of the issues glosses over important facts which necessarily preclude a finding that class members are similarly situated.

### 1. Foremen and Technicians Are Distinct Classes of Employees and Are Not Similarly Situated.

First, while the putative class members were all construction and maintenance crew members, there are two distinct subcategories of workers within those crews: foremen and technicians. Plaintiffs have provided no information by way of affidavit or otherwise, supporting their position that the two groups of employees are similarly situated. *See Burns*, 881 F.Supp.2d at 235 (finding plaintiffs failed to show putative class members were similarly situated where no information was provided in affidavits or in the amended complaint concerning the respective duties or responsibilities of the class members); *see Strait*, 911 F.Supp.2d at 722-723 ("To proceed as a collective action, Plaintiffs must demonstrate similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation…generally must be present"); *C.f. White v. MPW Indus. Servs., Inc..*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006)

(plaintiffs submitted several affidavits and declarations of current and former employees and a declaration of a purported FLSA expert in support of their motion).

Further, no distinction is made between foremen and the technicians in Plaintiffs' Motion for Conditional Certification beyond Plaintiffs noting that the crews were comprised of one or more technicians and a foreman. *See* Motion for Conditional Certification at p. 4. Still, foremen and technicians *are* two distinct groups, each of which performed different job functions and had distinct job responsibilities – one supervisory, one subordinate. For example, the foremen typically drive the company trucks to and from the jobsites, are responsible for overseeing the technicians' work at the jobsite, and prepare closeout documentation once work is complete at a jobsite. Delman Dep. pp. 55, 69, 120. The technicians are passengers in the company vehicles, are responsible either for performing preventative maintenance and repair to units at the telecommunication sites, or for installing or decommissioning telecommunications equipment – all functions that occur at the jobsite. Delman Dep. pp. 40, 64.

The distinctions between foremen and technicians are important because the FLSA, as amended in 1994 by the Portal-to-Portal Act, does not subject employers to a blanket requirement that they compensate *all* employees for travel time. Instead, an employer is exempted from payment for employee travel time to and from the place of the employee's principal activity, and as to activities which are preliminary or postliminary to those principal activities. 29 U.S.C. §§251-262 (1994); *see Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998); *see also See IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005) (during a continuous workday any travel time after the beginning of the employee's first principal activity and before his last is excluded from Portal-to-Portal's exemptions from compensation). "Principal activities" are defined as those activities that are "integral and indispensable" to the performance

of an employee's job duties.  *See IBP, Inc.*, 546 U.S. at 29-30; *see also Steiner v. Mitchell*, 350 U.S. 247, 248 (1956).  Because of the distinct roles and responsibilities of the technicians and foremen here, their "principal activities" are also distinct.  It follows that in order to determine whether either group was improperly denied travel time compensation, the Court must undertake individualized inquiries with respect to each group.  As such, foremen and technicians are not similarly situated and should not be certified as a single class.  *See Burns*, 881 F.Supp.2d at 235; *see also Strait*, 911 F.Supp.2d at 721 (finding certification is not appropriate where the Court cannot resolve the issues presented based on common inquiries).

Similarly, the Court denied conditional certification in *Burns* where a police dispatcher brought a putative class action against the City of Holyoke, alleging violations of the FLSA in failing to pay overtime.  *See Burns*, 881 F.Supp.2d at 233-234.  The putative class members included all current, or former members of the union who worked for the City during the Class Period.  *Id.* at 234.  Noting that the plaintiff had provided no information "in affidavits or in the amended complaint concerning the respective duties or responsibilities of class members or whether they work under similar supervision or management," the Court found that "based upon the diversity of the job positions and departments of employment, and a modicum of common sense, the requisite similarity of responsibilities and supervision is doubtful."  *Id.* at 235.  In so finding, the Court held that "courts generally require at least some showing of similar job requirements before allowing conditional certification."  *Id.; see also Trezvant*, 434 F.Supp.2d at 44 (requiring employees with disparate job titles and positions to make a factual showing of similar job functions and pay provisions before determining them to be similarly situated).

The Court denied conditional certification on similar grounds in *Strait* where current and former employees of a provider of third-party engineer contracting services brought an action on

behalf of themselves and others, alleging the employer deprived employees it claimed as exempt from overtime pay under the FLSA.  *See Strait* 911 F.Supp.2d 709, 720 (N.D.Ill. 2012).  The employees within the presumptive class included staff in various positions including IT staff and human resources personnel.  *Id.*  The Court found that to prove an employee qualifies under the professional or administrative employee exemptions, evidence is required of the employee's primary job duties along with evidence that the company pays the employee a salary basis.  The Court therefore denied plaintiff's motion for conditional certification on the grounds that it could not determine whether plaintiffs were similarly situated without individual inquiries. *Id.*

> **2.      To Determine Whether Technicians Were Properly Compensated For Work and Travel Time After Leaving the Jobsite, the Court Will be Required to Perform Individual Inquiries Regarding Each Crew Member on a Day-to-Day Basis.**

Centerline maintains that technicians were not *generally* entitled to travel time compensation for their regular travel to and from the jobsite because their principal activities began at the jobsite, and ended upon completion of the day's work there.  Still, Centerline compensated technicians for travel from the warehouse or muster point to the jobsites.  Delman Dep. pp. 52-56; Ex. 3, Travel Policy.  The Company also recognized that in certain circumstances, technicians should be compensated for travel time from the jobsite to the warehouse and for subsequent work performed there.  Such circumstances were outlined in its travel policy and included:  (1) if the project manager overseeing the assignment requested that the crew return to the shop; (2) the foreman requested an "exception" due to unusual circumstances, like excessive traffic; or (3) the distance from the work site to the shop or muster point was greater than 130 miles.  Ex. 4, Travel Policy.  As a result, if technicians were directed to return to the office to work, they would be compensated for the travel time and work time.  If they returned to the office and then proceeded to perform work, without being directed to do so

before leaving the jobsite, they were compensated for their work time, but not travel time. Delman Dep. at p. 55.

Still, Plaintiffs allege that *in practice*, technicians were not always properly compensated for work, travel, or overtime. To assess the validity of Plaintiffs' claims, the Court will be required to perform fact intensive individual inquires with respect to *each* individual technician to attempt to ascertain whether he performed compensable work at the warehouse after returning from the jobsite on a particular date, whether he was compensated for that work, whether he was compensated for *all* the time required. This individual inquiry process would be required to be repeated for *each* employee on *a day-to-day* basis. It follows that here, as in *Strait* and *Burns,* a collective action is not appropriate. *See Strait*, 911 F.Supp.2d at 721 (holding collective action not appropriate where plaintiffs "are situated differently enough so that the Court would need to undertake individualized factual assessments" to determine whether the employees were properly compensated); *see also Burns*, 881 F.Supp.2d at 236 (finding collective action not appropriate in the absence of facts to support plaintiff's conclusory assertion of widespread violations or a colorable factual basis for his claim that a manageable class of similarly situated plaintiffs exist)*; contrast Kane*, 138 F.Supp.2d at 215 (conditional certification allowed where plaintiff sought to certify a discrete class of workers who had worked on a single construction job under a single supervisor and had been subjected to the same explicit policy under one construction contract).

In the instant case, Centerline crews work on numerous different projects. Some crews may travel to distant locations where they remain on a per diem basis until the project is complete, while others may travel daily to a site more than 130 miles away (and would therefore be compensated for travel each way), while still other crews may commute to jobsites close by and may or may not be required to perform work at the warehouse. *See* Delman Dep. at pp. 50,

69-72. The number, location, and details of each crew member's duties vary greatly. Each project and each day is different.

   c.  **This Case is Distinguishable From Those Cited by Plaintiffs.**

The Plaintiffs' reliance on the cases cited in support for their position is misplaced. For example, citing to *White v. MPW Indus. Servs., Inc.*, Plaintiffs argue that "numerous courts have granted conditional certification under the FLSA in cases in which plaintiffs have challenged uniform policies relating to travel compensation such as the policies here." Motion for Cond. Cert. at p. 13. However, *White*, dealt with a class of employees with similar job responsibilities all of whom were subject to the employer's universal policy under which employees were *never* paid for time spent in the shop preparing to go to the customer site and *never* compensated for time spent traveling to customer sites in the same city, and *never* compensated for attending mandatory safety and branch meetings. *See White,* 236 F.R.D. at 370-371. That is simply not the case here. Centerline's policy *did* mandate that employees be compensated for travel and work time when they were required to perform work after leaving the jobsite and in certain other circumstances. Whether or not that policy was properly applied on a case-by-case basis requires case-by-case inquiries.

Furthermore, the Plaintiffs in *White* supported their motion with *numerous* affidavits, including an expert affidavit, declarations, and two depositions. The Plaintiffs here have not submitted a single affidavit concerning the respective duties and responsibilities of the class members, or which collectively point to an identifiable factual nexus that binds them together. *See Strait*, 911 F.Supp.2d at 723. Instead they rely upon the Employee Touch Details[1] of a *single* named Plaintiff, which alone necessarily cannot support a finding that a putative class of

---

[1] Employee Touch Detail is a record and an employee's daily activities based on Centerline's electronic time keeping system.

employees are similarly situated. Ex. 3, Employee Touch Detail. Plaintiffs also rely on Centerline's travel policies and the deposition of Josh Delman, both of which frustrate Plaintiffs' position.

Similarly in *Eldred v. Comforce Corp.*, the three classes of plaintiffs alleged they were subject to uniform policies under which they were *never* paid for overtime or travel time during the hours of the day which they normally worked, had wages withheld from their paychecks without having provided signed authorizations, and/or received no true or meaningful representation in exchange for their union dues. *Eldred v. Comforce Corp.*, Civil Action No. 3:08-CV-1171 LEK/DEP 2010 WL 812698, at *13-15. Again, this case is distinguishable because Centerline employees were not subject to any universal policy which systemically denied travel time compensation. If individual employees allege they were not properly compensated for travel or work time in certain circumstances, those cases must be considered individually.

Likewise, in *Hathway v. Masonry,* plaintiffs were all laborers who alleged they were subject to a company-wide policy which mandated they report to the employer's facility before traveling to load equipment in the company vehicle without compensation, required employees to travel from the facility to the worksite without compensation, required the employees to wait at the work site without compensation if weather conditions were unsuitable, and required employees to travel back to the employer's facility without compensation. *Hathaway v. Masonry*, Civil Action No. 5:11-CV-121, 2012 WL 1252569, at *3-4 (W.D.Ky. April 13, 2012). Here, not only is the putative class comprised of two distinct categories of workers with dissimilar job responsibilities, as discussed above, Centerline's policy did *not* systematically deny them travel time or other compensation for work done on the Company's behalf. The

remainder of the cases relied upon by the Plaintiffs are distinguishable on similar grounds. *See Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 248 (W.D. Mich. 2011); *see also Gonzales v. SimplexGrinnell LP,* 289 F.R.D. 463 (N.D. Cal. 2013).

### d. The Court Should Not Consider the State Court's Certification Decision.

Plaintiffs' suggestion that this Court should consider the State Court's decision granting certification is erroneous. The two cases involve different plaintiffs, located in different states, and are brought under different bodies of law. While, it is true that the Massachusetts case was certified under the more rigorous Rule 23 standard, certification was granted against the backdrop of Massachusetts' wages laws which provide heightened travel and overtime protections to workers than does the FLSA. *See generally*, G.L. c. 149, § 148 *et seq*.; 29 U.S.C. § 201, *et seq.* As such, the State case is not relevant to the Court's decision here.

### CONCLUSION

For the foregoing reasons the Defendants respectfully request that the Court deny Plaintiffs' Motion for Conditional Certification.

CENTERLINE COMMUNICATIONS, LLC, JOSHUA DELMAN and BENJAMIN DELMAN,

By their attorneys,

/s/ Eva M. Zelnick
Kenneth C. Pickering, BBO #634121
Eva M. Zelnick, BBO #676890
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
kpickering@mirickoconnell.com
ezelnick@mirickoconnell.com

Date: April 3, 2017

CERTIFICATE OF SERVICE

      I, Eva M. Zelnick, hereby certify that this document(s), filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 3, 2017.

                                                  /s/ Eva M. Zelnick
                                                  Eva M. Zelnick

Dated: April 3, 2017