UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANDREW LICHY, MARK BIXLER, MARK WALTERS, FREDERICK SPEER, *and* RYAN NIEMEYER, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 15-cv-13339-ADB |
| CENTERLINE COMMUNICATIONS LLC, JOSHUA DELMAN, *and* BENJAMIN DELMAN, | * * * * | |
| Defendants. | * | |

## MEMORANDUM AND ORDER
## GRANTING CONDITIONAL COLLECTIVE ACTION CERTIFICATION

BURROUGHS, D.J.

Plaintiffs are former employees of Defendants who allege that Defendants did not pay them for all hours worked, and for some overtime hours for which they are owed time-and-a-half pay. Plaintiffs brought this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, seeking to recover on behalf of themselves and all others similarly situated. Now before the Court is Plaintiffs' motion to conditionally certify a class and to issue notice to similarly situated employees pursuant to 29 U.S.C. § 216(b). [ECF No. 29]. For the reasons set forth below, the motion is granted.

I.     **FACTUAL BACKGROUND**

The following facts are drawn from the deposition of Joshua Delman [ECF No. 29-1], additional documents submitted as exhibits by Plaintiffs [ECF Nos. 29-3, 29-4], and the complaint [ECF No. 1].

Defendant Centerline Communications, LLC ("Centerline") is a telecommunications

company that supports mobile phone operators in the development, construction, and maintenance of their networks, including cell phone towers. The individual defendants, Joshua Delman and Benjamin Delman, own and operate Centerline. Joshua Delman is the principal, manager, and authorized signatory of the company, and Benjamin Delman is the company's vice president. Centerline is headquartered in Raynham, Massachusetts, and performs work in 25 states.

Centerline employs construction crews and maintenance crews to perform field operations. A construction crew is usually made up of three employees: a foreman, a lead technician, and a tower technician. The construction crew works together to construct telecommunications sites, which requires crew members to climb towers and install antennas, radios, and cabling, among other tasks. A maintenance crew is usually made up of two employees, a foreman and one other employee, and it performs tasks similar to those of the construction crews. The foreman is responsible for the construction of the site and the crew members, while the lead technician acts at the direction of the foreman, and the tower hand assists the lead technician. Construction crews and maintenance crews report to the same regional operations manager. Every member of the construction and maintenance crews, including the foreman, is paid on an hourly basis. Each named Plaintiff worked for Centerline for some period of time from 2011 to 2015 as a tower technician, a foreman, or both.

Since 2012 or 2013, Centerline has maintained offices and warehouses in Chicago, Syracuse, Pittsburgh, Philadelphia, and Raynham, which serve the surrounding areas. The warehouse for each region, also known informally by crew members as the "shop," typically stores the equipment that crew members use, such as hand tools, ropes, machinery, drills, and trailers, and may also store customer equipment, including antennas, radios, and cabling. Trailers

are used to transport customer equipment to the job site.

Before traveling to a job site together, crew members meet either at the warehouse or a "muster point," which is a designated meeting place. Centerline requires its crews to travel together to a work site, unless a project manager has requested that an employee drive directly to the job site, or a crew member has obtained permission to take his or her own vehicle for personal reasons, such as needing to leave early. Ordinarily, however, crew members travel together to and from the job site in a Centerline-owned truck. Each foreman is assigned a company truck and is responsible for transporting the other crew members to the work site.

When the crews meet at the warehouse prior to traveling to a job site, they may perform work at the warehouse, such as loading material onto the truck, preparing equipment, or conducting vehicle maintenance. The crew members might also have a daily meeting to set goals and objectives, conduct a "Job Safety Review," and complete paperwork. In some regions, crews also report to the main office for a weekly safety meeting. At the end of the day, crews return from the job site to the warehouse or the muster point. When they return to the warehouse, the crew members sometimes do work, such as removing trash, unloading the truck, and loading the truck for the next day. In addition, a project manager might direct the crew to return to the warehouse in order to return testing results.

Centerline has one travel time policy that applies to all construction and maintenance crew employees in all states. The policy at issue in this case was in effect from 2012 to 2015 or 2016, and was set forth in the employee handbook. Under this policy, Centerline paid employees for travel from the warehouse or muster point to the job site. Centerline did not pay employees for the return travel from the work site to the warehouse or muster point, however, unless the job site was more than 130 miles from the office and the project duration was less than a day.

Furthermore, travel time, whether to or from the job site, was only ever compensated at the employee's regular hourly rate, and never at the overtime rate. In September 2014, a new "Travel Policy Procedure" document was distributed among the Centerline management team. The document identified three situations in which return travel would be compensated: (1) if the project manager in charge of the assignment requested that the crew return to the shop, (2) if the foreman requested an "exception" due to unusual circumstances, such as heavy traffic or delays due to road closure; or (3) if the distance between the warehouse and the job site was greater than 130 miles. If a crew member needed to do work upon return to the warehouse, such as trash removal, the crew member could "clock in" to be paid for the time spent doing that work, but he or she still was not paid for the time spent making the return trip, unless one of the three exceptions applied.

Plaintiffs filed this lawsuit in September 2015, alleging that Defendants violated the FLSA by failing to pay them for the return travel time from the job site to the warehouse, and for not paying them for travel time at the overtime rate when they worked more than forty hours per week. [ECF No. 1]. Defendants contend that the FLSA does not require them to pay for travel time. [ECF No. 15].

## II.     DISCUSSION

### A.     Legal Standard

The FLSA permits individuals to bring a lawsuit for lost wages "either individually or as part of a collective action comprising 'other employees similarly situated.'" Prescott v. Prudential Ins. Co., 729 F. Supp. 2d 357, 362 (D. Me. 2010) (quoting 29 U.S.C. § 216(b)). "Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment." Cunha v.

4

Avis Budget Car Rental, LLC, 221 F. Supp. 3d 178, 181 (D. Mass. 2016) (quoting Iriarte v. Cafe 71, Inc., No. 15 CIV. 3217 (CM), 2015 WL 8900875, at *2 (S.D.N.Y. Dec. 11, 2015)). "A collective action is thus 'a fundamentally different creature than the Rule 23 class action' because 'the existence of a collective action under § 216(b) [depends] on the active participation of other plaintiffs.'" Prescott, 729 F. Supp. 2d at 362 (quoting Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1249 (11th Cir. 2003)).

Where a group of plaintiffs "seek[] to exercise [their] right to bring suit on behalf of others, district courts may facilitate the process of sending notice to others who may be similarly situated." Cunha, 221 F. Supp. 3d at 181. "While the First Circuit has not addressed the issue, most courts—including most district courts in this circuit—follow a two-step approach to determine whether to issue notice." Id. at 182 (citing Trezvant v. Fid. Emp'r Servs. Co., 434 F. Supp. 2d 40, 43 (D. Mass. 2006)); see also Roberts v. TJX Cos., Inc., No. 13-CV-13142-ADB, 2017 WL 1217114, at *2 (D. Mass. Mar. 31, 2017) (citing cases). "Under this approach, 'the court makes an initial determination of whether the potential class should receive notice of the pending action and then, later, after discovery is complete, the court makes a final 'similarly situated' determination.'" Cunha, 221 F. Supp. 3d at 182 (quoting Trezvant, 434 F. Supp. 2d at 42).

The standard for making the initial determination as to whether the proposed class members should receive notice "is 'fairly lenient' and 'typically results in conditional certification of the representative class.'" Id. (quoting Trezvant, 434 F. Supp. 2d at 43); see also Levecque v. Argo Mktg. Grp., Inc., No. 2:14-CV-00218-JAW, 2015 WL 3672647, at *7 (D. Me. June 12, 2015) (same). "At the first stage, the plaintiff 'has the burden of showing a reasonable basis for [his or her] claim that there are other similarly situated employees.'" Prescott, 729 F.

Supp. 2d at 364 (quoting Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008)). The plaintiffs must "put forth some evidence that the legal claims and factual characteristics of the class . . . are similar." Trezvant, 434 F. Supp. 2d at 44. "[T]he plaintiff need only show that there is 'some factual support'—as opposed to mere allegations—that the potential plaintiffs are similarly situated." Cunha, 221 F. Supp. 3d at 182 (quoting Melendez Cintron v. Hershey P.R., Inc., 363 F. Supp. 2d 10, 16 (D.P.R. 2005). "In other words, the plaintiff must make 'a modest factual showing' that [he or she] and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful policy or plan." Prescott, 729 F. Supp. 2d at 364 (quoting Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547 (6th Cir. 2006)). The standard of review has been described as "not particularly stringent," "not heavy," and "flexible." Id. (quoting Morgan, 551 F.3d at 1261).

  **B.**  **Analysis**

  Defendants first argue that Plaintiffs have not demonstrated that the two groups of employees to be included in the proposed class, foremen and technicians, are similarly situated, because foremen and technicians have different job duties. The Court disagrees with this assessment of the evidence, which indicates that the job duties of foremen and technicians overlap substantially. Joshua Delman stated in his deposition that foremen and technicians work together, on a small team, to perform construction and maintenance tasks. Plaintiffs do not dispute that foremen have some additional duties, including supervision, driving a truck, and filling out paperwork. The fact that foreman and technician jobs are not identical does not preclude certification, however. At the conditional certification stage, courts routinely grant certification where the proposed class members' job titles or duties are not exactly the same, as long as they are similar. See Curtis v. Scholarship Storage Inc., No. 2:14-CV-303-NT, 2015 WL

1241365, at *1 (D. Me. Mar. 18, 2015) (plaintiffs need only show that members of proposed class had "similar but not necessarily identical jobs"); Prescott, 729 F. Supp. 2d at 364 (plaintiffs must have "similar but not necessarily identical jobs"); see also Byard v. Verizon W. Va., Inc., 287 F.R.D. 365, 371 (N.D.W. Va. 2012) (plaintiffs "are not required to prove that the potential class members have identical job titles or positions"); Jirak v. Abbott Labs., Inc., 566 F. Supp. 2d 845, 848–49 (N.D. Ill. 2008) ("Plaintiffs do not have to show that the potential class members have *identical* positions for conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay."). Here, Plaintiffs have demonstrated foremen and technicians perform construction and maintenance tasks together in a small group, which supports a finding that they are similarly situated.

Next, Defendants argue that the difference in the job duties of foremen and technicians is important because of the Portal-to-Portal Act, which provides that employers are not required to compensate employees for time spent traveling "to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," or for "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a). Defendants contend that the "principal activities" of foremen and technicians are distinct, so the Court will be required to make individualized assessments with respect to each group.

While Defendants may be correct that, ultimately, the two groups may be subject to different requirements under the law, the Court is not required to make such a determination at the conditional certification stage. Instead, courts routinely hold that consideration of the merits of the underlying case is not appropriate on a motion for conditional certification. See Mejias v.

7

Banco Popular de P.R., 86 F. Supp. 3d 84, 87 (D.P.R. 2015) ("[A]t this early stage of the litigation, the Court does not [make] credibility determinations or reach the merits of plaintiffs' claims."); Jennings v. Cellco P'ship, No. CIV. 12-00293 SRN/TN, 2012 WL 2568146, at *6 (D. Minn. July 2, 2012) (explaining that "arguments concerning the individualized inquiries required and the merits of Plaintiffs' claims are inappropriate at this stage of the proceeding," as such arguments can be raised "at the second, or decertification stage," and noting that "[c]onditionally certifying a class does not signal agreement or disagreement with Plaintiffs' claims," but rather "merely allows Plaintiffs to determine whether other Representatives are interested in pursuing this claim"); Romero v. H.B. Auto. Grp., Inc., No. 11 CIV. 386 CM, 2012 WL 1514810, at *9 (S.D.N.Y. May 1, 2012) ("In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims."). To that end, multiple courts have declined to consider the question of whether travel time was compensable under FLSA at the conditional certification stage. See Oakes v. J.F. Bernard, Inc., No. 5:11-CV-1006, 2011 WL 6415535, at *6 (N.D. Ohio Nov. 22, 2011); Parr v. Hico Concrete, Inc., No. 3:10-1091, 2011 WL 3293391, at *3 (M.D. Tenn. Aug. 1, 2011); Sjoblom v. Charter Commc'ns, LLC, 571 F. Supp. 2d 961, 970–71 (W.D. Wis. 2008). Making such a determination requires further factual development, and "[a]s the lawsuit progresses, the contours of this issue will become more definite and more amenable to determination." Sjoblom, 571 F. Supp. 2d at 971.

In addition, Defendants do not contest the fact that all foremen and technicians who would be included in the proposed class were subject to the same written policies concerning payment for travel time. The existence of a common policy or practice is an important indication that conditional certification is appropriate. Indeed, "the focus at the initial certification stage 'is on the issue of whether the Plaintiffs were the victims of a common policy or plan which

8

violated the law.'" Zaldivar v. JMJ Caterers, Inc., 166 F. Supp. 3d 310, 322–23 (E.D.N.Y. 2016) (quoting Cohan v. Columbia Sussex Mgmt., LLC, No. CV 12-3203 JS AKT, 2013 WL 8367807, at *4 (E.D.N.Y. Sept. 19, 2013)). See Prescott, 729 F. Supp. 2d at 364 (plaintiff must show that employees "suffered from a common unlawful policy or plan"); see also Beasely v. GC Servs. LP, 270 F.R.D. 442, 444 (E.D. Mo. 2010) ("Conditional certification at the notice stage requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." (internal quotation marks omitted)); Ferrell v. ConocoPhillips Pipe Line Co., No. 5:09-CV-00431-RRP-OP, 2010 WL 1946896, at *5 (C.D. Cal. May 12, 2010) (explaining that "[u]nder the prevailing standard for the first stage of 'certifying' a collective action, Plaintiff must put forth 'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan,'" and noting that defendant's argument about the need for individualized inquiries was "unfounded" where "the legal question concerns nothing more than whether a uniformly applied pay policy violates [the] FLSA" (quoting Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001))).

The cases that Defendants cite in support of their position are clearly distinguishable, and in fact, indicate that certification is proper here. In Burns v. City of Holyoke, 881 F. Supp. 2d 232, 234 (D. Mass. 2012), the plaintiff sought conditional certification of a class that would encompass various city employees, including clerical workers, inspectors and code enforcers, police dispatchers, medical technicians, and maintenance employees. The plaintiff provided no information whatsoever "concerning the respective duties or responsibilities of class members or whether they work under similar supervision or management," and in fact, the court noted that, based on common sense, "the requisite similarity of responsibilities and supervision is doubtful." Id. at 235. Furthermore, the plaintiff only provided affidavits from two police dispatchers to

9

support his contention that the city maintained a common policy and practice of under-calculating overtime pay, which the court determined was inadequate to prove that all proposed class members were subject to the same practice. Id. at 236. The present case is unlike Burns in that Plaintiffs here have demonstrated that the class members have overlapping duties and work together in a team to perform their assigned tasks under the same manager. Furthermore, Defendants do not deny that all of the class members are subject to a common policy concerning whether and how travel time is paid.

Defendants also rely on Strait v. Belcan Eng'g Grp., Inc., 911 F. Supp. 2d 709 (N.D. Ill. 2012). In that case, the plaintiffs proposed a nationwide class that "encompasses employees with various job classifications, working in multiple cities, under different managers, who utilize different policies and practices for compensating employees." Strait, 911 F. Supp. 2d at 722. The court emphasized repeatedly that the plaintiffs had failed to provide evidence that the defendants maintained a nationwide policy that applied to all proposed class members. Id. at 723–24, 728–29, 731. Defendants note that the court in Strait refused to grant conditional certification because the court would be required to conduct individualized factual inquiries as to whether the defendants made improper deductions, but the main reason this was necessary was because of the lack of a uniform policy or practice. Here, where a clearly written policy undeniably applied to all members of the proposed class, the situation is quite different. Accordingly, Strait does not indicate that certification is inappropriate here.

Lastly, Defendants have repeatedly hinted and suggested that Plaintiffs are required to provide affidavits as evidence in support of their motion, instead of the deposition and documentary evidence that Plaintiffs submitted. Defendants have not explicitly argued this point, and cite to no authority explaining why a deposition is unacceptable and an affidavit is required.

It is not apparent to the Court how there could be a meaningful difference, since an affidavit and a deposition are both forms of sworn testimony. Although it may be more common at the conditional certification stage for plaintiffs to offer their own testimony through an affidavit, rather than the deposition testimony of a defendant, perhaps because conditional certification usually occurs before discovery is complete, and the evidentiary bar to obtain certification is low, as discussed supra, a defendant's deposition testimony can also be used to support the plaintiff's case, and may even be *stronger* evidence in favor of certification. Thus, the Court sees no basis for refusing to consider the deposition testimony filed by Plaintiffs or assigning it less weight than an affidavit. See Stevens v. HMSHost Corp., No. 10 CIV. 3571 ILG VVP, 2012 WL 4801784, at *3 (E.D.N.Y. Oct. 10, 2012) (granting conditional collective action certification based on deposition testimony); Ravenell v. Avis Budget Car Rental, LLC, No. 08-CV-2113 SLT ALC, 2010 WL 2921508, at *5 (E.D.N.Y. July 19, 2010) (same).[1]

### III. CONCLUSION

Accordingly, Plaintiff's motion to conditionally certify the proposed class [ECF No. 29] is GRANTED. The Court orders as follows:

1. This case is conditionally certified as a collective action on behalf of all construction crew and maintenance crew employees, including foremen, who have worked for Centerline Communications, LLC, Joshua Delman, and Benjamin

---

[1] Plaintiffs noted that a Massachusetts state trial court recently certified a class of Massachusetts-based Centerline employees under Massachusetts Rule of Civil Procedure 23, which is analogous to Federal Rule of Civil Procedure 23. Bodkin et al. v. Centerline Communications, LLC et al., Plymouth Civil Action No. 2015-00265 (Mass. Super. Feb. 13, 2017); [ECF No. 29-6]. The plaintiffs in that case challenge the same travel policies at issue here, but their claims are based on state law, which is more protective than the FLSA. As such, because the conditional collective action standard and the substantive law at issue here are fairly different from the questions involved in the state court case, that opinion is of limited value in assessing the present motion for certification.

11

Delman outside of Massachusetts between October 26, 2012 and April 20, 2016.

2. Defendants shall produce the names, addresses, email addresses, and telephone numbers of the conditionally certified collective action members to Plaintiffs within fourteen days.

3. Plaintiffs shall file a proposed form of notice to opt-in class members within fourteen days.

**SO ORDERED.**

March 28, 2018 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE